The AMERICAN INSURANCE COMPANY et al., Appellants,

v.

FIRST SAVINGS AND LOAN ASSOCIATION et al., Appellees.

No. 16959.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 25, 1968.

Rehearing Denied Nov. 22, 1968.

Johnson, Guthrie, White & Stanfield, and Robert Lee Guthrie, Dallas, for appellant American Ins. Co.

Nelson, Montgomery & Robertson, and David Tate, Wichita Falls, for First Sav. & Loan Ass'n of Burkburnett, Texas.

Thompson, Coe, Cousins & Irons, and Franklin H. Perry, Dallas, for appellee Atlantic Ins. Co.

## OPINION

MASSEY, Chief Justice.

We initially consider the case before us as involving the judgment secured by plaintiff First Savings and Loan Association, appellee, as against American Insurance Company, appellant. In other aspects the case will be subsequently discussed.

First Savings, as mortgagee under American's fire insurance policy, recovered a judgment for its interest thereunder. This policy of insurance had been secured by the mortgagor (owner) of the property prior to the time First Savings became mortgagee. It was by endorsement that First Savings became a party insured. The property insured was destroyed by fire several years after the policy had been canceled for non-payment of premium—indisputably as to the interest of the mortgagor—with knowledge of First Savings, the mortgagee. The premise for First Savings' judgment was that because of the failure of the insurance company to give it notice in writing of the cancellation, provided by the policy contract, the policy was legally in effect as to the mortgagee's interest as of the time of the fire loss.

 Furthermore, the amount of the judgment awarded First Savings was not predicated alone upon its interest under and by reason of the amount of the lien as of date of the fire, but also for an additional amount (not due to the fire itself, but because as mortgagee it thereafter declared to be due the indebtedness owing it by its mortgagor before it filed suit) consisting of attorney's fees and 8% interest provided by the note in the event of the mortgagor's default thereon.

Affirmed.

Our case is not complicated through necessary consideration of the sufficiency of the amount of insurance nor as to the amount of damage done to the property insured. They are treated as established, with predicate laid for consideration of questions presented on appeal.

In its actions preliminary to the suit, and by the suit itself, First Savings sought to place itself—insofar as the interest of American was involved—in the same posi-

tion as was the similarly situated mortgagee in Norwich Union Fire Ins. Soc., Ltd. v. Citizens' Building & Loan Ass'n, 7 S. W.2d 144 (Texarkana, Tex.Civ.App., 1928, error refused). In that case the mortgagee Building and Loan Association was owed on its note, principal and interest, $1,205.53 as of November 2, 1926 when fire destroyed the property of one Norris, mortgagor. As of that date the Norwich Union company had in effect a policy of fire insurance on Norris' property, with an endorsement which stipulated that the loss or damage, if any to the property insured, should be paid to the aforesaid mortgagee "'as its interest might appear'". On date of the fire the note was not due, it did become due, and—pursuant to the Building and Loan Association's right so to do according to its contract with Norris—was declared to be due, along with the attendant obligation of the contract to pay attorney's fees as well as the amount of principal and interest accrued to date of the declaration. Suit was brought against the insurance company on a theory of a right of recovery against it identical to the manner of procedure by an ordinary mortgagee against the defaulting mortgagor,—though contingent upon it being established that the insurance company was obligated under the policy, because of the fire loss, to make payment to the mortgagee " 'as its interest might appear' ".

In Norwich Union Fire Ins. Soc., Ltd. v. Citizens' Building & Loan Ass'n, it was effectually held that the insurance company's liability was not limited to the amount of $1,205.53, the principal and interest figure calculable as of the date of the loss, but—in view of the fact that it denied liability for the greater figure for which the mortgagor Norris had become liable as result of the mortgagee's election to declare the indebtedness due before suit was brought on the policy—was additionally liable for the amount of attorney's fees and the prescribed 10% interest from date the note was declared to be due. Such was considered as the "mortgagee's interest"

which Norwich Union Fire Insurance Society had obligated itself to pay.

Applying the principles decided in Norwich Union Fire Ins. Soc., Ltd. v. Citizens' Building & Loan Ass'n to the instant case, First Savings, by petition upon which trial proceeded (filed February 14, 1967), sought to recover of American the primary amount of $12,063.20, plus interest accrued thereon at the rate of 8% since date of October 1, 1965, and the additionally prescribed reasonable attorney's fee of not less than 10% of the amount of principal and interest calculable to time of judgment.

In the judgment secured by First Savings it was granted the aforesaid $12,063.-20, plus interest thereon at the rate of 8% per annum from October 1, 1965 until paid, plus $1,300.00 as attorney's fees.

■ On trial before the jury the First Savings tendered $411.77 into court as the premium payments accrued and unpaid on the policy, the (original) obligation of its mortgagor had the policy of insurance never been canceled in any respect or as to any party. It is obvious that to treat the $411.77 as an obligation payable in behalf of its mortgagor by the First Savings, and as receivable (for judgment purposes) by American, would necessarily increase the amount of the former's "mortgagee's interest", thus increasing the judgment amount to be rendered by the same figure, $411.77. Therefore American was not prejudiced by that portion of the judgment of the trial court which directed that said amount be returned to First Savings. American's complaint in regard thereto is without merit, nor does its complaint because the jury, in its deliberations, might have been lead to believe that the $411.77 would be delivered to First Savings present any ground for reversal.

Our conclusion is that in the absence of error in the conduct on the trial judgment as against American is to be affirmed. We proceed to a consideration of such errors urged as ground for a reversal.

■ One point of error complains because of the exclusion of proffered testimony of two of American's clerks. The clerks were employed in the home office of the company and discharged the duty of sending cancellation notices to mortgagees in instances where cancellation notices were sent to primary insureds who were also mortgagors. They had knowledge of and/or participated in the preparation of and mailing the notice of policy cancellation to First Savings' mortgagor on August 19, 1963. That this was the fact and that the mortgagor received the notice is not a matter of dispute. It was shown that after one year's lapse of time the company's records were destroyed, so that there was no original evidence of record concerning the alleged mailing of notice of cancellation to First Savings. The date of the fire loss with which we are concerned was March 26, 1966. Therefore, if the company's records ever reflected that a notice of cancellation had been mailed to First Savings in August of 1963 resort must necessarily be had to other evidence to prove the fact. Had the clerks been permitted they would have testified that though without independent recollection they were certain that they had mailed notice of policy cancellation to First Savings, as the mortgagee under the policy, at the same time they mailed like notice to the policyholder, mortgagor, because that was standard custom and practice of American.

■ We hold the evidence excludable. The action of the trial court did not constitute reversible error in any event. In the first place the fact (allegedly inferable) that a notice of cancellation was mailed to First Savings, as mortgagee, would necessarily need to have been predicated upon evidence, not a presumption, that American's records reflected the fact of its interest. Of this there is no proof. An inference of fact cannot rest upon a fact presumed, i.e. not established by evidence. Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791 (1955). Furthermore, it would be within the discretion of the court to exclude the proffered testimony of custom in other instances (and in transactions between American and others of its policyholders) as relevant to what was done in the instant case. Exclusion was proper when the trial court concluded that the material transaction in the instant case did not have such an intimate connection with custom and practice involving other policyholders as to lead naturally to the conclusion that what occurred was like unto that which transpired according to the usual custom. See Wigmore on Evidence (3rd Ed.), Title I, "Circumstantial Evidence", Sub-Title II, Topic VIII, "Evidence to Prove Habit, Status, Course of Business, or Custom", § 377, "Same: in Contracts * * * (2) (b) Contract evidenced by other contracts with other persons".

Some findings of the jury were that First Savings knew more than 10 days prior to the fire that the June 29, 1963 installment due to be paid on its mortgagor's premium note had not been paid; that by its failure to pay said installment there was no election by First Savings to terminate the policy of insurance; but that as result of First Savings' failure to pay the same American was reasonably led to believe the policy of insurance had been terminated, and because it so believed American made no effort to collect any premium installment after August 19, 1963 when it gave notice of policy cancellation to J. D. Ashton Jr. First Savings' Mortgagor. Other findings were that the fact of such written notice of cancellation to its mortgagor was brought to the attention of First Savings by the Burk Agency insurance agents more than 10 days prior to the fire; American was reasonably led to believe First Savings had acquiesced in the cancellation of the policy; but First Savings did not acquiesce to the cancellation of the policy and it was never notified in writing by American that the policy was cancelled. It was also found that for more than 10 days prior to the fire First Savings knew that the property in question was not occupied as a grocery and market.

On the pleadings under which it went to trial American plead that the policy had been terminated as to First Savings, the mortgagee, prior to the loss by: (1) written notice to the mortgagee; or (2) by suspension for non-payment of premium in accordance with the terms of the policy; or (3) by agreement of the parties; or (4) by estoppel. On the appeal it is settled, by reference to the findings aforementioned, that there was no termination effected by written notice to the mortgagee or by agreement of the parties. American is therefore left with its contentions of entitlement to prevail on the theory of estoppel, or on the theory that protection of the insurance policy was "suspended" during the period when the premiums (provided for by premium note) remained unpaid, inclusive of the date of the fire. We first consider the question of estoppel.

▉▉▉▉ In order to constitute an equitable estoppel or *estoppel in pais* there must exist a false representation or concealment of material facts; made with the knowledge, actual or constructive, of the facts; the party to whom the representation (or concealment) was made must have been without knowledge or the means of acquiring such knowledge of the real facts; and the representation (or concealment) must have been made with the intention that it should be acted on; and the party to whom it was made must have relied or acted on it to his prejudice. Furthermore, before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be established by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952). First Savings was not estopped. American was self-deluded. To contend otherwise would necessarily require the supply of some requisite by intendment, which is prohibited. First Savings was under no duty to act when it obtained knowledge of the fact that written notice of cancellation had been sent to its mortgagor. In the absence of a duty to act, silence or failure to act is not a basis for estoppel. A. R. Clark Investment Company v. Green, 375 S.W.2d 425 (Tex.Sup.1964).

▉▉▉▉ In connection with American's contentions relative to the fact that in any event the coverage of the policy should be treated as having been suspended at the time of the loss, a substantial premise is established in its argument on equitable grounds. We are compelled to agree with American in all its contentions and undoubtedly would be disposed to hold for it if recourse to equity were proper. However, the cause of action is founded in contract, and therefore is an action at law. Though we have considered the propriety thereof no predicate for equitable seizure upon the transaction appears. As the parties have bound themselves by their contract so must we find them to be bound. The sole premise for the contention of suspension of coverage which may be said to be grounded in the provisions of the policy contract is that since First Savings knew that the owner/mortgagor was not occupying the building insured as a grocery and market when the loss occurred, as warranted, but had moved out leaving the building unoccupied with an attendant increase in hazard, First Savings had breached its duty in not giving notice of the increase in hazard to American. The policy made such duty a provision of the policy. It is to be remembered that the jury found that for more than 10 days prior to the date of the fire First Savings knew that the property was not occupied as a grocery and market. By answer "No" to a special issue the jury refused to find that the property was "vacant" at time of the fire and for 30 consecutive days prior thereto. All issues referred to were those on which American carried the burden of proof.

We overrule the contention of American. Under the policy it was provided that as to the "interest of the mortgagee only therein" neither by the act or neglect of the mortgagor or owner, nor by the occupation of the premises for purposes more hazardous than are permitted by the policy, would such interest be invalidated. Furthermore the contractual situation is such that nothing other than cancellation could have operation to invalidate the policy or the particular claim with which we are concerned. Though evidence in the case was to the effect that the president of First Savings was aware of the fact that a higher premium had to be paid to the insurance company if and when a building became vacant, he also testified that he did not know whether such a vacancy caused an increase in hazard. Evidence from fire marshal of the City of Wichita Falls was introduced to the effect that an occupied building would be more susceptible to burning than would an unoccupied building. American sought no special issue inquiring into the matter of any increase in hazard at time of the fire and none was submitted. Though there are some cases which indicate that a vacancy of insured premises results in an increase in hazard as a matter of law, the vacancy in the instant case could not be so treated. There would be a question of fact, in view of the evidence presented. The same would be true of First Savings' awareness of hazard increase incident to knowledge of the vacancy.

■ The policy contract, as to First Savings, could not be said to be avoidable by American under the theory that there was a failure of consideration in that there had been a breach by the former in its failure to pay premiums known to be due on the policy after it had knowledge that written notice of cancellation had been sent to the mortgagor. The consideration to American was as stated on the face of its policy by the following language: (for and in consideration of) " * * * the stipulations and conditions herein or added hereto which are made a part of this poli-

cy, and of the premiums provided, * * *." It so happened that the mortgagor, one Ashton, had already secured the policy prior to the time he borrowed money. It was as result of such loan that he gave First Savings a lien thereon. The Mortgage Clause affording protection to First Savings, mortgagee, was added by endorsement. First Savings could not be said to be a party to the agreement of Ashton relative to the premium note which was accepted by American nor to be in any way obligated to pay the premiums. There was independent consideration, other than and in addition to the payment of premiums, as is apparent from the language noted above.

First Savings perfected its own appeal. However, it expressly limited the same and waived any right to complain of the trial court's judgment in the event the judgment as against American be affirmed. It is affirmed. Assuming, however, that we have erred in the affirmance we will note our conditional holdings on First Savings' cross-points.

■ The first of these complains of the failure of the trial court to render judgment for the $600.00 found by the jury as reasonable attorney's fees, if any, "incurred only insofar as, and if, this case is appealed to the Court of Civil Appeals". From the examination of First Savings' Conditional Motion for New Trial it is apparent that no predicate was laid for the contention by a point of error, there having been no assignment of error in said motion which presented the contention to the trial court. A Court of Civil Appeals is confined to a review of actions in the court from which an appeal is taken in instances where appellate jurisdiction exists solely by reason of the usual process of appeal. That is the situation in this case.

■ The second of First Savings' cross-points contended that since there was no evidence to sustain Special Issue No. 14 of the court's charge, the trial court erred in overruling its objection to the submission of the issue. Of this there was noth-

ing concerning such complained of in First Savings' Conditional Motion for New Trial, but in relation thereto it was not obliged to make mention thereof in its motion to the trial court. This would be because its complaint was not because of the denial of relief, but contrarily consisted of matter of which complaint may be made for the first time on appeal as consequential in the event the appeal of the primary appellant should be upheld. Texas Rules of Civil Procedure 420, "Brief: Appellee's".

The Special Issue, No. 14, was that in answer to which the jury found that by First Savings' failure to pay the June 29, 1963 premium note installment, after it knew its mortgagor had not paid it, American was reasonably led to believe the insurance policy had been terminated (as to the interest of First Savings). Actually there was no evidence to support the issue. What we have already said relative to estoppel has application. There we have held that American cannot prevail under its theory of First Savings' estoppel, even were full credence given all the issues and answers of the jury thereto appertaining. Of these this would be one, and as to the answer of the jury returned there was no evidence and the issue should not have been submitted. However, the error was harmless.

Remainder of the conditional appeal of First Savings is as against the Atlantic Insurance Company. Said insurance company has not been previously mentioned. If First Savings' judgment as against American is to be sustained on appeal it would have no claim against Atlantic, for the "errors and omissions" policy which the latter company had issued to First Savings (to secure it in the event it failed to have insurance on property on which it held mortgages, subject to conditions, etc., of course) would be inoperative. If, and in the event it was error for the trial court—and this court—to grant and affirm the judgment against American, First Savings says that it was entitled to judgment against Atlantic. It is in that respect, and subject to such condition, that First Savings' appeal is considered.

The take nothing judgment in favor of Atlantic Insurance Company and denial of the claim of the First Savings and Loan Association is affirmed because we have affirmed the judgment of First Savings as against American Insurance Company. If we have erred in doing so we would reverse and remand the cause insofar as it constitutes a cause of action between First Savings and Atlantic.

The specially requested special issues of First Savings as against Atlantic which the trial court denied should have been given for they were raised by the pleadings and the evidence and, if favorably answered would have entitled First Savings to a judgment against Atlantic if it should ultimately be determined that it was not entitled to judgment against American.

It is believed that we have discussed and indicated our holdings on all points of error presented. In any event we have severally considered them, and except as indicated to the contrary in the opinion, they are overruled.

Judgment is affirmed.